**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

In re:                                                  )
                                                        )
MICHAEL AMICHAY WILLNER,     )     Case No. 19-13661-BFK
                                                        )     Chapter 13
                                                        )
                    Debtor.                    )
_____)

**MEMORANDUM OPINION AND
ORDER GRANTING TRUSTEE'S
MOTION TO DISMISS**

This matter is before the Court on the Chapter 13 Trustee's Motion to Dismiss this bankruptcy case pursuant to Bankruptcy Code Section 109(e). Docket No. 16. The Debtor, who is appearing *pro se*, filed an Opposition to the Trustee's Motion. Docket No. 17. The Court heard the parties' arguments on January 9, 2020. Shortly after the hearing, the Debtor filed a Clarification of his position, which the Court has considered. Docket No. 20. For the reasons stated below, the Court will grant the Trustee's Motion.

**Findings of Fact**

The following facts are not disputed.

   A. *The Debtor's Chapter 11 Case.*

   1.     The Debtor, Michael Willner, is an individual residing in Lorton, Virginia. He and his wife, Marguerite Evans Willner, own a home at 11521 Potomac Road, Lorton, Virginia 22079. The property, situated on an 11-acre lot overlooking the Potomac River, consists of five bedrooms, six and a half baths and over 15,000 square feet of living area.[1]

---

[1] https://www.realtor.com/realestateandhomes-detail/11521-Potomac-Rd_Lorton_VA_22079_M50317-57375. The Court uses this source solely to describe the size and location of the property, and not to determine any disputed facts in this case.

1

2. On December 13, 2012, the Debtor filed a Voluntary Petition under Chapter 11 in this Court. *In re Michael Amichay Willner*, No. 12-17322-BFK (Bankr. E.D. Va. Nov. 22, 2016). The Debtor was represented by counsel throughout the case.

3. The Debtor listed the Potomac Road property in his Schedules with a value of $6,100,000.00. *Id.*, Docket No. 12, Schedule A, p. 3. He listed U.S. Bank, Trustee of a WaMu securitized mortgage trust, with a "disputed" claim secured by a Deed of Trust against the property in the amount of $3,435,287.00. *Id.*, Schedule D, p. 9.

4. U.S. Bank filed a Proof of Claim in the amount of $3,441,397.01, as a secured claim. *Id.*, Proof of Claim No. 7-1. At that time (February 2013), U.S. Bank asserted that arrearages on the loan were in the amount of $382,571.23. *Id.*

5. U.S. Bank filed a Motion for Relief from the Automatic Stay, which the Debtor opposed. *Id.*, Docket Nos. 59, 64.

6. On October 9, 2014, the Debtor filed an Application to Employ a realtor to list and sell the property, which the Court granted. *Id.*, Docket Nos. 68, 79.

7. The Debtor filed a Plan and Disclosure Statement in November 2014. *Id.*, Docket Nos. 72, 73. The Plan, as originally proposed, called for the sale of the property within 18 months. *Id.*, Docket No. 72, Article IV. If the property was not sold within 18 months, then the Debtor would have been required to engage an auctioneer to conduct an auction of the property. *Id.* In either event, the proceeds of the sale were to be paid to U.S. Bank as a Class B creditor. *Id.*

8. U.S. Bank objected to this treatment, on the ground that it did not adequately protect its interest in the property, particularly because the Debtor was not proposing to make any adequate protection payments during the 18-month marketing period, as well as on the

ground that the Plan sought to modify the U.S. Bank mortgage against the Debtor's principal residence in violation of Bankruptcy Code Section 1123(b)(5). *Id.*, Docket No. 81.

9. On April 1, 2015, the Court sustained U.S. Bank's objections and denied confirmation of the Plan. *Id.*, Docket No. 123.

10. Further, the Court entered an Order granting U.S. Bank relief from the automatic stay, but staying the relief on the condition that the Debtor obtain a fully ratified contract for the sale of the property by September 30, 2015. *Id.*, Docket No. 124.

11. The Debtor filed an Amended Plan and Amended Disclosure Statement on January 4, 2016. *Id.*, Docket Nos. 156, 157. This time, the Plan deleted the previous sale and auction provisions, and simply provided that U.S. Bank "shall be entitled to exercise all non-bankruptcy rights and remedies, which it may have as to the collateral securing the claim, and its claim shall be paid in full therefrom to the extent allowed." *Id.*, Docket No. 156, Article III, p. 6.

12. The Court entered an Order on March 21, 2016, confirming that U.S. Bank was entitled to relief from the automatic stay because the Debtor had not obtained a ratified contract by the September 30, 2015, deadline. *Id.*, Docket No. 176. This Order was amended on April 22, 2016, at the Debtor's request to provide that nothing in the Order "shall constitute or be deemed or held out to be a determination in any respect as to the validity, ownership, or amount due on any note or deed of trust or right to foreclose or take any other action with respect to the property." *Id.*, Docket No. 189, p. 2.

13. The Court confirmed the Debtor's Amended Plan on May 6, 2016. *Id.*, Docket No. 195.

14. The Debtor received a discharge on November 17, 2016, and the case was closed. *Id.*, Docket Nos. 211, 212, 217.[2]

15. The Debtor never objected to U.S. Bank's Proof of Claim in this case.

B. *The Eastern District of Virginia Lawsuit.*

16. On December 12, 2014, while the Debtor's Chapter 11 bankruptcy case was pending, the Debtor and his wife (both acting *pro se*) filed a Complaint against JPMorgan Chase Bank, U.S. Bank, and others, in the Eastern District of Virginia. *Willner v. Dimon*, No. 1:14-cv-01708-AJT-MSN.

17. On May 11, 2015, District Judge Trenga granted the Defendants' Motions to Dismiss the Complaint. *Id.*, Docket No. 53. In his Order, Judge Trenga explained that the loan originated with Washington Mutual Bank ("WaMu"), which later was taken over by the FDIC. JPMorgan Chase purchased the assets of WaMu, including the loan against the Debtor's property. The Debtor and his wife sought relief under the HAMP program, but they were advised that they did not qualify for such relief. The loan later was sold to U.S. Bank as Trustee for a securitized trust.

18. Judge Trenga noted that certain of the Plaintiffs' claims arose out of conduct alleged against WaMu. Other claims were asserted directly against JPMorgan Chase and U.S. Bank for their alleged conduct (the "direct" claims).

19. Judge Trenga held that: (a) the Plaintiffs' claims arising from WaMu's conduct were barred by the Financial Institutions Reform, Recovery and Enforcement Act of 1989's (FIRREA's) administrative exhaustion requirements; and (b) the Plaintiffs' direct claims against

---

[2] In all, the Debtor spent almost four years in his Chapter 11 case, from December 2012 to November 2016, without ever presenting a contract for the sale of the Lorton property.

4

JPMorgan Chase and U.S. Bank failed to state claims under Rules 12(b)(6) and 9(b) (imposing a more exacting pleading standard for fraud claims) of the Federal Rules of Civil Procedure.

20. The Willners appealed to the Fourth Circuit. On February 16, 2017, the Fourth Circuit affirmed Judge Trenga's decision in a published Opinion. *Willner v. Dimon*, 849 F.3d 93 (4th Cir. 2017). The Fourth Circuit noted that the "bar date" to file claims with the FDIC was December 30, 2008, and the Willners did not file their claims until after the District Court issued its decision in 2015. *Id*. at 102 n.2. The Court held that FIRREA's exhaustion requirements were "by design, severe." *Id*. at 112.

21. Of relevance here, the Fourth Circuit also held:

> We also reject Mr. Willner's related argument that U.S. Bank's filing a proof of claim in bankruptcy court created subject matter jurisdiction over his claims in the district court. Here, Mr. Willner appears to invoke an exception to FIRREA's exhaustion requirement that exists within the bankruptcy system for a debtor who has a proof of claim filed against him by a creditor and then is allowed to bring a claim against the creditor in bankruptcy court outside of FIRREA's administrative process. *See, e.g.*, *In re Best Prod. Co., Inc.*, No. 93 CIV. 1115 (CSH), 1994 WL 141970, at *3 (S.D.N.Y. Apr. 20, 1994) ("[I]f [the FDIC] had not submitted a claim against the bankruptcy estate ... it also would not have waived its right to demand that [debtor] pursue administrative remedies within FIRREA prior to bringing its claim against [the FDIC] in the bankruptcy court."). That exception is inapplicable though, because Mr. Willner is not in bankruptcy court.

*Id*. at 111.[3]

22. Finally, the Fourth Circuit affirmed the dismissal of the Willners' direct claims against JPMorgan Chase and U.S. Bank, holding that the Complaint failed to state any legally cognizable direct claims against these entities. *Id*. at 114.

---

[3] In fact, Mr. Willner *was* in bankruptcy the entire time that his action was pending in the District Court, from the filing of the Complaint in December 2014 through Judge Trenga's decision in May 2015. He was not in bankruptcy at the time that the Fourth Circuit issued its decision in February 2017. Mr. Willner elected not to object to U.S. Bank's proof of claim during his four-year stay in bankruptcy.

5

*C. The District of Columbia Lawsuit.*

23.   On October 29, 2015 (about five months after Judge Trenga's decision, but while that decision was on appeal to the Fourth Circuit), the Debtor and his wife, again acting *pro se*, filed a Complaint against JPMorgan Chase, U.S. Bank, the FDIC and others in the U.S. District Court for the District of Columbia. *Willner v. Dimon*, No. 1:15-cv-01840.

24.   On January 4, 2018, District Judge Cooper granted the Defendants' Motion to Dismiss. *Id.*, Docket No. 34.

25.   In his Opinion, Judge Cooper held that all of the Willners' claims were barred by res judicata as a result of the Fourth Circuit's decision affirming Judge Trenga's Order dismissing their claims. *Id.*

26.   The Willners appealed. On March 1, 2019, the U.S. Court of Appeals for the D.C. Circuit affirmed, holding that the Fourth Circuit's decision was res judicata of the Willners' claims. USCA Case No. 18-5107. Further, the Court held that the Willners' newly-stated constitutional claims against the FDIC were time-barred. *Id.* at 6.

27.   The Willners filed a Petition for Certiorari with the U.S. Supreme Court. The Supreme Court denied the Petition on October 17, 2019.

*D. The Debtor Files for Relief Under Chapter 13.*

28.   On November 5, 2019 (less than a month after the Supreme Court denied the Petition for Certiorari), the Debtor filed a Voluntary Petition under Chapter 13 with this Court. Case No. 19-13661-BFK.

29.   In his Schedules the Debtor listed the Lorton property with a value of $4,970,000.00. Docket No. 14, Schedule A/B, p. 3. He listed U.S. Bank with a "disputed" claim in the amount of $4,325,000.00. *Id.*, Schedule D, p. 15. He did not list any affirmative claims

6

against U.S. Bank or any other party (other than a claim against AlphaGrip in the amount of $332,000.00) in his Schedule B (Personal Property).

30. The Debtor's proposed Chapter 13 Plan does not propose to pay any plan payments. Docket No. 13, ¶ 2 (Funding of Plan - $0).

31. In Sections 8A and 8B of the Plan, the Debtor proposes to avoid the U.S. Bank lien against the property. *Id.*, ¶¶ 8A, 8B.

32. When asked by the Court at the hearing, the Debtor acknowledged that he has not paid a mortgage payment since before his Chapter 11 case was filed in 2012 (seven years ago). He stated that the mortgage payment was approximately $20,000.00 per month. His Schedules I and J (Income and Expenses) state under oath that he and his wife have a total of $2,108.00 in combined monthly income, and that after the payment of their ordinary living expenses (not including any payments on the mortgage) they have $127.00 in monthly net income. Docket No. 13, Schedule I, Line 12, Schedule J, Line 23c.

33. The Debtor stated at the hearing that it was his intent to wait until U.S. Bank files a proof of claim and, when it does, he will object to the claim. He stated that he believes that his claims against U.S. Bank exceed the amount of the Bank's claim, and therefore the balance of the loan is "zero."

34. Select Portfolio Servicing (SPS), which is the servicer for U.S. Bank, has filed a proof of claim in the amount of $4,328,701.55, secured by the property. Proof of Claim No. 1-1. SPS asserts that the arrearages on the loan now stand at $1,931,081.66.

35. Other than the U.S. Bank secured claim, the Debtor has listed a single unsecured debt in his Schedules, in the amount of $39,083.00, to FedLoan Servicing. Docket No. 14, p. 20.[4]

---

[4] The Debtor stated in his Opposition to the Trustee's Motion: "His [the Debtor's] only debt is a $39,083 student loan." Student loans are presumptively non-dischargeable under Section 523(a)(8) of the Code.

7

36. On February 12, 2020, the Debtor filed a Verified Objection to U.S. Bank's Proof of Claim. Docket No. 25.

## Conclusions of Law

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

### I.   The Debtor Exceeds the Secured Debt Limit Under Section 109(e).

Bankruptcy Code Section 109(e) provides debt limits for secured and unsecured debts in Chapter 13 cases. 11 U.S.C. § 109(e) (2018). As of the filing of the petition in this case, the secured debt limit was $1,257,850.00. The Debtor listed the U.S. Bank secured claim in the amount of $4,325,000.00, clearly in excess of the secured debt limit.[5]

*A. The Debt to U.S. Bank is Neither Contingent nor Unliquidated.*

Section 109(e) excludes debts that are "noncontingent" and "liquidated." It does not use the term "disputed." Noncontingent debts are debts where "all of the events necessary to give rise to liability for it take place prior to the filing of the petition." *In re Jones*, 2013 WL 2352569, at *2 (Bankr. D.S.C. 2013) (quoting *In re Sappah*, 2012 WL 6139644, at *1 (Bankr. E.D.N.C. 2012)). Contingent debts are those "in which a liability is dependent upon a future extrinsic event." *In re Piovanetti*, 496 B.R. 57, 63 (Bankr. D.P.R. 2013); *In re Lewis*, 157 B.R. 253, 255 (Bankr. E.D. Va. 1993). A liquidated debt is one that is readily ascertainable as to amount. *In re Green*, 574 B.R. 570, 577 (Bankr. E.D.N.C. 2017); *In re Mitrano*, 2008 WL 4533659, at *1

---

[5] The Debtor argues that the Section 109(e) secured debt limit cannot be applied to him because he has received a discharge in his Chapter 11 case. This argument is foreclosed by Section 102(2) of the Bankruptcy Code, which provides that the term "claim against the debtor" includes a claim against property of the debtor. *See Fitzgerald v. Gorman*, 2014 WL 11512353, at *5 (E.D. Va. Nov. 14, 2014); *In re Sandrin*, 536 B.R. 309, 313 (Bankr. D. Colo. 2015).

8

(Bankr. E.D. Va. Sept. 25, 2008) ("A debt is unliquidated only if the amount of the debt cannot be determined by computation, the classic example being a personal injury tort claim that has not yet been reduced to judgment.")

Disputed claims are not excluded for purposes of the Section 109(e) eligibility requirement. *United States v. Verdunn (In re Verdunn)*, 89 F.3d 799, 802 n.9 (11th Cir. 1996) ("[t]he fact that [the Debtor] contests the Commissioner's claim does not remove it as a claim under section 109(e) or render it unliquidated"); *Matter of Knight*, 55 F.3d 231, 237 (7th Cir. 1995); *In re Kelly*, 2018 WL 4354653, at *7 (Bankr. D. Md. Sept. 11, 2018) ("[o]therwise, debtors would simply list all of their debts as "disputed" to bypass the Chapter 13 debt limitations"); *In re Bosserman*, 587 B.R. 668, 677 (Bankr. N.D. Ohio 2018); *In re Aye*, 2017 WL 713566, at *1 (Bankr. M.D. Fla. Feb. 22, 2017) ("a debtor cannot force eligibility for chapter 13 merely by designating debts as disputed"); *In re Mitrano*, 2008 WL 4533659, at *1 ("a debt is not excluded from the analysis simply because it is disputed"); *In re Claypool*, 142 B.R. 753, 754-55 (Bankr. E.D. Va. 1990).

The Debtor's debt to U.S. Bank was not subject to any further events occurring as of the filing of this case and the amount was readily ascertainable. It is not, therefore, contingent or unliquidated. The Court finds that the Debtor is not eligible for Chapter 13 because his secured debt exceeds the Section 109(e) limit.

 B. *The Debtor's Objection to U.S. Bank's Proof of Claim Is Barred by Res Judicata.*

Alternatively, the Debtor's Verified Objection to U.S. Bank's Proof of Claim is barred by principles of res judicata. The two District Courts and the two Courts of Appeal to address the Debtor's claims have discussed FIRREA's exhaustion requirements and this Court will not repeat their efforts. It is sufficient to state that the Fourth Circuit found that the Bar Date to

submit claims to the FDIC was December 30, 2008, and the Willners did not submit their claims until after the District Court issued its ruling in 2015. *Willner*, 849 F.3d at 102 n.2. As the Fourth Circuit held, there are two FIRREA provisions at issue, Subsection (i) of Section 1821(d)(13)(D), which prohibits "any claim or action for payment from, or any action seeking a determination of rights with respect to" the assets of a failed institution, and Subsection (ii) of the same Section, concerning "any claim relating to any act or omission" of the failed institution. 12 U.S.C. § 1821(d)(13)(D). The Fourth Circuit held that the latter provision, subsection (ii), barred the Willners' claims. *Willner*, 849 F.3d at 104-05 ("Because these unexhausted claims are functionally pleaded against the acts and omissions of WMB rather than against independent misconduct by Chase and U.S. Bank, § 1821(d)(13(D)(ii) operates as a jurisdictional bar.")

The Debtor argues, based on the Fourth Circuit's brief discussion of the so-called bankruptcy exception to FIRREA's exhaustion requirement, that he may object to U.S. Bank's Proof of Claim now that he's back in bankruptcy (although, as noted above, he was in bankruptcy the entire time that the Eastern District of Virginia action was pending). Docket No. 20, Debtor's Clarification of Arg., p. 2 ("Debtor is now in this Bankruptcy Court and, therefore, FIRREA's jurisdictional bar would not apply to his anticipated affirmative defenses to U.S. Bank's expected proof of claim of right to foreclose.")  The Court uses the term "so-called" bankruptcy exception because there really is no bankruptcy exception under FIRREA. Rather, it is generally accepted that affirmative defenses are not barred by FIRREA's exhaustion requirements, so that, for example, a Debtor's objection to a proof of claim filed by a failed institution's successor in a purely defensive manner would not be barred. *See Jacobs v. PT Holdings*, 2012 WL 458418, at *9 (D. Neb. Feb. 13, 2012) ("Although FIRREA's exhaustion requirements apply regardless of whether a party is a debtor in bankruptcy, a debtor in

10

bankruptcy will still be entitled to assert true affirmative defenses to a claim made against it without subjecting those defenses to the administrative exhaustion requirement"); *Settlers' Housing Serv., Inc. v. Schaumberg Bank & Trust Co., N.A. (In re Settlers' Housing Serv., Inc.)*, 540 B.R. 624, 633 (Bankr. N.D. Ill. 2015) ("Even though claims against the FDIC and its successors are barred, affirmative defenses are not. An affirmative defense is not an action or a claim, but a response to an action or a claim, and therefore is not barred by § 1821(d)(13)(D)"); *Bloom v. FDIC (In re First State Bancorporation)*, 498 B.R. 322, 332 (Bankr. D. N.M. 2013) ("[T]here is no bankruptcy exception to FIRREA's jurisdictional bar. It is the defensive nature of the Trustee's fraudulent transfer claim, rather than the fact that the claim is asserted in connection with a pending bankruptcy case, that makes FIRREA's jurisdictional bar inapplicable.")

The Debtor argues that he is only raising affirmative defenses to U.S. Bank's proof of claim, "to which FIRREA's jurisdictional bar does not apply." Docket No. 20, Debtor's Clarification of Arg., p. 2 n.4. This, however, was precisely the argument that he raised, and that the Fourth Circuit rejected, in the Eastern District of Virginia litigation. *See Willner*, 849 F.3d at 110 ("We hold that a purported affirmative defense does not qualify as one for the purpose of avoiding FIRREA's exhaustion requirement if, after looking beyond the nomenclature of the request for relief, the remedy sough is actually a 'claim' within the meaning of FIRREA.") The Willners' request "for a declaratory judgment that the Deed of Trust cannot be used to foreclose on the Willners' house" in the prior litigation is indistinguishable from the Debtor's objections to the U.S. Bank proof of claim in this case. *Id.* There is some disagreement in the case law on whether a debtor's or a trustee's objection to a proof of claim comes within Section 1821(d)(13)(D)(ii)'s exhaustion requirement. *Compare In re Blackstone Financial Holdings*, 573

B.R. 1, 13 (Bankr. D. Mass. 2017) (Chapter 7 Trustee's objection to JPMorgan Chase's proof of claim based on loan originated by WaMu, combined with a request to invalidate mortgage, was a claim that "falls squarely within § 1821(d)(13)(D)(ii)"), *with Settlers' Housing Serv., Inc. v. Schaumberg Bank & Trust Co., N.A. (In re Settler's Housing Serv., Inc.)*, 568 B.R. 40, 48 (objection to claim based on fraudulent conduct constituted an affirmative defense not barred by FIRREA's exhaustion requirements). The Court need not resolve this conflict. Rather, the Fourth Circuit has already held *in this case* that Mr. and Ms. Willner's claims seeking to enjoin a foreclosure were barred by Section 1821(d)(13)(D)(ii).

None of the cases examining FIRREA's exhaustion requirements in bankruptcy involved a prior adjudication on the merits of the borrowers' claims. There is nothing in FIRREA, nor in the Bankruptcy Code, that entitles the Debtor to resurrect claims that were already adjudicated at the time of a bankruptcy filing. *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 128 (4th Cir. 2000) ("when a bankruptcy court is considering the validity of a claim upon which debt is based, no new special bankruptcy defense is involved and so res judicata applies as it ordinarily would"). Even accepting that there is a bankruptcy exception to FIRREA's exhaustion requirements, there is no support in the case law for the proposition that this exception is not subject to ordinary notions of claim preclusion.

The Court further notes that the Fourth Circuit affirmed the dismissal of the Willners' *direct claims* against JPMorgan Chase and U.S. Bank for failure to state a claim under Rules 12(b)(6) and 9(b). *Willner*, 849 F.3d at 112. Any direct claims against these lenders that could have been asserted in the Eastern District of Virginia lawsuit, therefore, are barred as a matter of res judicata. *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016) ("Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on

the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'") (citations omitted).

Virtually all of the Debtor's objections are based on WMB's conduct. *See* Docket No. 25, Debtor's Verified Obj., pp. 2 ("Agents for WMB fraudulently concealed the fact that Mr. Willner's loan application, which was prepared by a purported agent of WMBFA, listed Mr. Willner's expected compensation to be $52,000 per month . . . "), 14 ("WMBFA did not have the legal capacity or authority to participate in a Loan Transaction . . . "), 16 ("WMB concealed the fact that a WMB employee inflated Mr. Willner's estimated income"), 17 ("WMB concealed the fact that WMBFA did not have the legal capacity or authority to enter into the Loan Transaction"). Further, except as stated below, the Debtor's allegations against U.S. Bank rely exclusively on U.S. Bank's position as the successor to WMB. *Id.*, p 18 ("As successor in interest, [U.S. Bank] stands in the shoes of WMB and is, therefore, liable . . . ). This is precisely the kind of successor liability that FIRREA's claim preclusion rules seek to avoid.[6]

Finally, the Debtor suggests that he has a "new" defense against U.S. Bank, that is, a defense that arose after the Fourth Circuit's and the D.C. Circuit's decisions. Docket No. 20, Debtor's Clarification of Arg., p. 2 ("one of the Debtor's affirmative defenses did not accrue until recently and was not previously addressed by the courts"). The only new allegation against U.S. Bank is that "U.S. Bank [was] responsible for submitting a proposed Order to this Court which contained several material false statements with the intention of using the order to commit fraud on a state court judge . . . ." *Id.*, p. 18. U.S. Bank's Relief from Stay Order in the previous case was entered on March 21, 2016. *In re Willner*, No. 12-17322-BFK, Docket No. 176. It was

---

[6] It is also impossible to believe that Mr. Willner was not aware that is his income was $52,000 per year, not $52,000 per month, at the time the loan was originated with WMB.

corrected at the Debtor's request on April 22, 2016. *Id.*, Docket No. 189. The Debtor suffered no discernable prejudice in the intervening one month.

The Court find that the so-called bankruptcy exception is not available to the Debtor at this point and that res judicata bars his Objection to the lender's secured proof of claim.

**II.     The Case Was Not Filed in Good Faith.**

Every bankruptcy case carries with it an obligation of good faith. 11 U.S.C. § 1325(a)(7) (court can confirm a plan only upon a finding that the petition was filed in good faith); *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007) ("[T]he broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.") (internal footnotes omitted); *In re Mitrano*, 472 B.R. 706, 710-11 (E.D. Va. 2012). Although the Chapter 13 Trustee has not asserted a lack of good faith, the Court is under an independent duty to ensure that the requirement of good faith is met. *Gorman v. Birts (In re Birts)*, 2012 WL 3150384, at *5 (E.D. Va. Aug. 1, 2012); *In re Parandeh*, 2015 WL 430383 (Bankr. E.D. Va. Jan. 28, 2015); *see also Deans v. O'Donnell (In re Deans)*, 692 F.2d 968, 972 (4th Cir. 1982) ("A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan . . . .") (quoting 9 COLLIER ON BANKRUPTCY 9.20, 319 (14th ed. 1978)). The Court finds that this case was not filed in good faith.

The Debtor was in Chapter 11 for almost four years. He was represented by counsel throughout the course of that case. He elected not to assert any claims or defenses to U.S. Bank's proof of claim and to take his chances in federal court. He lost, twice, and appealed both decisions to the Circuit Courts of Appeal, with one petition for certiorari in the Supreme Court. Now that he has suffered adverse judgments in both cases, he seeks a return to the Bankruptcy Court to take advantage of the so-called bankruptcy exception.

The amount of the U.S. Bank secured claim has increased from $3,441,397.01 in the Debtor's Chapter 11 case to $4,328,701.55 in this case, an increase of over $800,000.00, due to the lack of any mortgage payments since 2012. *Compare* Case No. 12-17322-BFK, Proof of Claim No. 7-1, *with* Case No. 19-13661-BFK, Proof of Claim No. 1-1. Select Portfolio Servicing now asserts that the arrearages alone total $1,931,0181.66. Proof of Claim No. 1-1.

The Debtor's Chapter 13 Plan calls for zero payments. Other than the secured U.S. Bank claim, he has only one debt, a presumptively non-dischargeable student loan debt to FedLoan Servicing in the amount of $39,083.00. He does not propose to pay anything on the student loan debt. The Plan states: "Student loan debt to be paid from proceeds of private sale of house" (Docket No. 13, Chapter 13 Plan, p. 7), but as noted below, the Debtor has been representing to this Court that he would sell the property since the inception of his Chapter 11 case in 2012. The only purpose of the Debtor's bankruptcy is to delay a foreclosure by challenging the lender's secured lien. The Debtor and his spouse, who have a combined $2,108.00 in monthly income (Docket No.13, Schedule I), do not have the financial capability to make monthly mortgage payments to the lender. The regular monthly mortgage payments approximate $20,000.00 per month. The arrearages exceed $1.9 million, which over a 60-month plan would require monthly payments of $31,666.66. Together, the monthly mortgage payment and payment of the

15

arrearages over 60 months would require payments *in excess of $50,000.00 per month*. The Debtor has listed the lender's claim as "disputed" in his Schedules, notwithstanding the adverse judgments that he suffered in two separate attempts at litigation with the same lender.

Finally, the Debtor's suggestion that he intends to sell the Lorton property completely lacks credibility. He had almost four years to sell the property in Chapter 11. Since the closing of his Chapter 11 case in November 2016, he has had an additional three years. He has never presented the Court with a contract for approval. Clearly, the Debtor just seeks delay *ad infinitum* so that he and his wife can live in a spectacular property with Potomac River views, without paying anything on the mortgage. This is not what Chapter 13 was designed to accomplish.

The Court finds that this case was filed in bad faith.[7]

## Conclusion

It is therefore **ORDERED**:

1. The Trustee's Motion to Dismiss is granted. The case is dismissed.

2. The Debtor is advised that he has 14 days from the entry of this Order to note an appeal by filing a Notice of Appeal with the Clerk of the Bankruptcy Court.

3. The Clerk will mail copies of this Memorandum Opinion and Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Feb 19 2020

Alexandria, Virginia

/s/ Brian F. Kenney
Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: Feb 20 2020

---

[7] The Trustee also objected to confirmation of the Debtor's Chapter 13 Plan. Docket No.15. The Court finds that the Trustee's Objection is moot in light of the dismissal of this case, above.

<u>Copies to</u>:
Michael Amichay Willner
11521 Potomac Road
Lorton, VA 22079
*Pro Se Debtor*

Thomas P. Gorman
300 N. Washington St. Ste. 400
Alexandria, VA 22314
*Chapter 13 Trustee*