IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MICHAEL AMICHAY WILLNER, | ) | Bankr. Case No. 19-13661-KHK |
| | ) | |
| Debtor | ) | |
| ————————————————— | ) | |
| | ) | |
| MICHAEL AMICHAY WILLNER, | ) | |
| | ) | |
| Appellant, | ) | Case No. 1:20-cv-00374 (AJT/MSN) |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS P. GORMAN, | ) | |
| | ) | |
| Appellee. | ) | |
| ————————————————— | ) | |

## ORDER

Appellant-Debtor Michael Amichay Willner ("Debtor"), proceeding *pro se*, has filed an appeal from a February 20, 2020 order dismissing his Chapter 13 bankruptcy case and a March 24, 2020 order denying his Motion to Reconsider the February 20 Order, both issued by the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"). Because the Bankruptcy Court correctly concluded that Debtor's Chapter 13 bankruptcy petition was not filed in good faith, the Bankruptcy Court's decision to dismiss the bankruptcy case is **AFFIRMED** and this appeal is **DISMISSED**.[1]

## I.  BACKGROUND

The following facts are undisputed and relevant for purposes of this appeal:

---

[1] Because a hearing will not aid in the decisional process, the Court dispenses with a hearing. *See* E.D. Va. Local Civ. R. 7(J).

The Debtor and his wife, Marguerite Evans Willner, own and reside in a home located at 11521 Potomac Road, Lorton, Virginia 22079 (the "Lorton Property").

On December 13, 2012, the Debtor, through counsel, filed a Voluntary Petition under Chapter 11 in the Bankruptcy Court. *In re Michael Amichay Willner*, No. 12-17322-BFK (Bankr. E.D. Va. Nov. 22, 2016).  In that bankruptcy case, the Debtor listed the Lorton Property in his schedules, indicating that the residence had a value of $6,100,000.00. *Id*., [Doc. 12], Schedule A at 3. With respect to that property, Debtor listed U.S. Bank, N.A. ("U.S. Bank"), the trustee of a Washington Mutual Bank ("WaMu") securitized mortgage trust, with a "disputed" claim secured by a Deed of Trust against the property in the amount of $3,435,287.00. *Id*., Schedule D at 9.  In February 2013, U.S. Bank filed a proof of claim against the Debtor, in which it asserted a secured claim in the amount of $3,441,397.01. *Id*., Proof of Claim No. 7-1.  To enforce its Deed of Trust and essentially foreclose on the Lorton Property, U.S. Bank moved the Bankruptcy Court for relief from the automatic stay, which the Debtor opposed. *Id*., [Docs. 59, 64].

After the Debtor filed an Application to Employ a realtor to list and sell the Lorton Property, *id.*, [Doc. 68], which the Court granted, *id*., [Doc. 79], the Debtor filed an initial plan and disclosure statement in November 2014. *Id*., [Docs. 72, 73].  As initially proposed, the Plan provided for the sale of the Lorton Property within 18 months, and if not sold within that time period, an auctioneer would be engaged to conduct an auction of the property. *Id*., [Doc. 72] at Article IV.  In either case, proceeds from either the sale or auction were to be paid to U.S. Bank as a Class B creditor. *Id*.

On April 1, 2015, after U.S. Bank objected to its treatment under Debtor's proposed plan, *id*., [Doc. 81], the Court denied the Chapter 11 plan, *id*., [Doc. 123], and entered a separate Order

granting U.S. Bank relief from the automatic stay and permitting U.S. Bank to enforce its non-bankruptcy rights and remedies against the Lorton Property. *Id*., [Doc. 124]. That order, however, stayed any such relief on the condition that Debtor obtain a fully-executed contract for the sale of the property by September 30, 2015. *Id*.

On January 4, 2016, Debtor filed an amended plan and disclosure statement, which deleted the previous sale and auction provisions with respect to the Lorton property and simply provided that U.S. Bank "shall be entitled to exercise all nonbankruptcy rights and remedies, which it may have as to the collateral securing the claim, and its claim shall be paid in full therefrom to the extent allowed." *Id*., [Doc. 156], Article III at 6. On March 21, 2016, the Court entered an Order confirming that U.S. Bank was entitled to relief from the automatic stay because the Debtor had not obtained a ratified contract by the September 30, 2015 deadline. *Id*., [Doc. 176]. On May 6, 2016, the Court confirmed the Debtor's amended plan, *id*., [Doc. 195], and on November 17, 2016, Debtor received a discharge, thus closing the Chapter 11 bankruptcy case, *id*., [Docs. 211, 212, 217].

On December 12, 2014, while the Debtor's Chapter 11 bankruptcy case was pending before the Bankruptcy Court, the Debtor and his wife, both proceeding *pro se*, filed a Complaint against JPMorgan Chase Bank, U.S. Bank, among others, in this Court. *See Willner v. Dimon*, No. 1:14-cv-01708 (AJT/MSN) (E.D. Va.). By Order dated May 11, 2015, *id*., [Doc. 53], this Court granted the Defendants' then-pending motions to dismiss the complaint after finding that plaintiffs' claims arising from WaMu's conduct were barred by the Financial Institutions Reform, Recovery and Enforcement Act of 1989's administrative exhaustion requirements; and that the plaintiffs' direct claims against JPMorgan Chase and U.S. Bank failed to state claims under Federal Rules of Civil Procedure 12(b)(6) and 9(b). *Id*.

3

In 2015, the Willners timely-filed an appeal to the United States Court of Appeals for the

Fourth Circuit (the "Fourth Circuit"). On February 16, 2017, the Fourth Circuit affirmed this

Court's May 11, 2015 opinion. *See Willner v. Dimon*, 849 F.3d 93 (4th Cir. Feb. 16, 2017). In

its opinion, the Fourth Circuit held, with respect to the Willners' claims against WaMu, that the

"bar date" to file their claims with the Federal Deposit Insurance Corporation ("FDIC") was

December 30, 2008, and the Willners did not file their claims until after this Court issued its

decision in 2015. *Id*. at 102 n.2. The Fourth Circuit further affirmed this Court's dismissal of

the Willners' direct claims against JPMorgan Chase and U.S. Bank, agreeing that the Willners'

complaint failed to state any legally cognizable direct claims against these entities. *Id*. at 114.

On October 29, 2015, five months after this Court's May 11, 2015 decision, but during

the pendency of their appeal to the Fourth Circuit, the Willners, again proceeding *pro se*, filed a

Complaint against JPMorgan Chase, U.S. Bank, the FDIC and others in the United States District

Court for the District of Columbia. *Willner v. Dimon*, No. 1:15-cv-01840 (D.D.C.). On January

4, 2018, the United States District for the District of Columbia, citing the Fourth Circuit's

February 16, 2017 opinion, granted the defendants' motion to dismiss and dismissed the

complaint on *res judicata* grounds. *Id*., [Doc. 34]. On March 1, 2019, the United States Court of

Appeals for the District of Columbia Circuit affirmed, holding that the Fourth Circuit's decision

was entitled to preclusive effect over the Willners' claims. *See* U.S.C.A. Case No. 18-5107. On

October 17, 2019, the United States Supreme Court denied the Willners' petition for *certiorari*.

Less than a month after the Supreme Court denied *certiorari*, Debtor, proceeding alone

and *pro se*, filed a Voluntary Petition under Chapter 13 in the Bankruptcy Court. Bankr. Case

No. 19-13661-BFK (E.D. Va.) (the "Bankruptcy Case"). In his attached schedules, Debtor listed

the Lorton Property with a value of $4,970,000.00, *id*., [Doc. 14], Schedule A/B at 3; and

disputed liability of $4,325,000.00 due to U.S. Bank, *id*., Schedule D at 15. He did not list any affirmative claims against U.S. Bank in his Schedule B (Personal Property). *Id*, Schedule B at 3-12. Further, the Debtor's proposed Chapter 13 plan did not propose to make any plan payments. *Id*., [Doc. 13] ¶ 2 (Funding of Plan - $0). Moreover, in Sections 8A and 8B of the Debtor's proposed plan, the Debtor proposed to avoid the U.S. Bank lien against the property, arguing that once U.S. Bank files a proof of claim against the Debtor, he will object to that claim on the grounds that his claim against U.S. Bank offsets and thus nullifies the amount of U.S. Bank's claim thus returning the balance of any secured loan owing to U.S. Bank to "zero." *Id*., ¶¶ 8A, 8B.

In the Bankruptcy Case, Select Portfolio Servicing ("SPS"), which is the servicer for U.S. Bank, filed a proof of claim in the amount of $4,328,701.55, secured by the Lorton Property. *Id*., Proof of Claim No. 1-1. In its claim, SPS asserts that the arrearages on the loan now stand at $1,931,081.66. On February 12, 2020, the Debtor filed a Verified Objection to SPS / U.S. Bank's Proof of Claim. *Id*., [Doc. 25].

On February 20, 2020, the Bankruptcy Court granted the Chapter 13 Trustee's Motion to Dismiss the Bankruptcy Case, over an opposition filed by the Debtor and after a hearing at which the Debtor appeared.[2] R. at 240-256. In its Order, the Bankruptcy Court found that the Debtor exceeded the secured debt limit applicable to Chapter 13 cases under § 109(e) of the Bankruptcy Code; that (in the alternative) *res judicata* barred any objection to U.S. Bank's proof of claim; and that Debtor did not file the Bankruptcy Case in good faith. R. at 247-55. As a result, the Bankruptcy Court dismissed the Bankruptcy Case. R. at 255.

---

[2] The Trustee also filed an Objection to Confirmation of Debtor's Chapter 13 Plan. *Id*. [Doc. 15]. Because the Bankruptcy Court dismissed the bankruptcy case, the court dismissed that objection as moot.

On March 2, 2020, Debtor, pursuant to Federal Rule of Bankruptcy Procedure 9023,

moved the Bankruptcy Court to alter or amend the February 20 Order on the grounds that the

Bankruptcy Case was filed in good faith and that, contrary to the Bankruptcy Court's findings,

his affirmative defense to U.S. Bank's proof of claim was not barred by *res judicata*.  On March

24, 2020, the Bankruptcy Court denied the Debtor's motion. *Id*. at 268-71.

Debtor now appeals from the Bankruptcy Court's February 20 and March 24 Orders.[3]

## II.  JURISDICTION

Debtor appeals from a final order dismissing his Chapter 13 case.  Accordingly, this

Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

## III.  ISSUES ON APPEAL

Debtor raises two issues on appeal:

1. Did the Bankruptcy Court err in concluding that Debtor, proceeding *pro se*, lacked good
   faith in filing the Chapter 13 case where the total of all *in personam* claims by Debtor's
   credits does not exceed the Chapter 13 debt limit and where Debtor disputes the secured
   creditor's *in rem* claim?

2. Did the Bankruptcy Court err in applying *res judicata* to bar Debtor's objection to the
   secured creditor's proof of claim?

## IV.  STANDARD OF REVIEW

On appeal, a bankruptcy court's factual findings are reviewed under the "clearly

erroneous" standard, Fed. R. Bankr. P. 8013, and questions of law are reviewed *de novo*, *In re*

*Phinney*, 405 B.R. 170, 175 (E.D. Va. 2009) (quoting *In re Hartford Sands, Inc.*, 372 F.3d 637,

639 (4th Cir. 2004)).  A finding of fact is clearly erroneous only if, after review of the record, the

---

[3] On June 1, 2020, Debtor filed its brief, *see* [Doc. 4] ("Appellant's Br."); on June 30, 2020, Gorman filed a
response, *see* [Doc. 6] ("Appellee's Br."); and on July 13, 2020, Debtor filed a reply [Doc. 7] ("Appellant's Reply").
Accordingly, this appeal is ripe for consideration.

reviewing court is left with "a firm and definite conviction that a mistake has been committed."

*Klein v. PepsiCo, Inc.*, 845 F.2d 76, 79 (4th Cir. 1988).

A bankruptcy court's decision to dismiss a case under 11 U.S.C. § 1307(c) is

discretionary. *See In re Jackson v. United States*, 131 F.3d 134 [published in full-text format at

1997 U.S. App. LEXIS 21635] 1997 WL 746763, at *4 (4th Cir. December 4, 1997) (per curiam)

("When determining whether cause exists to warrant a dismissal or conversion, a bankruptcy

court retains . . . 'broad discretion.'"). As such, a court reviews a bankruptcy court's decision to

dismiss a case for abuse of discretion. *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 652

(5th Cir. 2010); *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223 (9th Cir. 1999). A district

court abuses its discretion "when it (1) acts . . . arbitrarily, as if neither by rule nor discretion, (2)

fails to . . . adequately . . . take into account judicially recognized factors constraining its exercise

of discretion, or (3) rests its decision on . . . erroneous factual or legal premises." *United States

v. McTague*, 840 F.3d 184, 188-89 (4th Cir. 2016) (internal quotations omitted). The same

standard applies to bankruptcy courts. *See* 28 U.S.C. § 158(c)(2).

## V. ANALYSIS

### A. The Bankruptcy Court did not err when it concluded that Debtor did not file the Chapter 13 bankruptcy in good faith.

Debtor challenges the Bankruptcy Court's finding that he did not file the underlying

Chapter 13 bankruptcy case in good faith.

A bankruptcy petition may be dismissed if filed in bad faith. *See* 11 U.S.C. § 1307(c); *In

re Love*, 957 F.2d 1350 (7th Cir. 1992) (holding that although § 1307(c) does not contain a

specific good faith requirement, lack of good faith is sufficient cause for dismissal under chapter

13). And a bankruptcy court can raise the issue of bad faith *sua sponte* and dismiss a case in

order to prevent abuse of the Bankruptcy Code.  *See* 11 U.S.C. § 105(a); *In re Brown*, 399 B.R.

162, 165 (Bankr. W.D. Va. 2009).

In deciding whether a bankruptcy petition was filed in bad faith, courts employ a totality

of the circumstances test, *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982), and may look

to a wide range of factors, including "[1] the percentage of proposed repayment . . . [2] the

debtor's financial situation, [3] the period of time payment will be made, [4] the debtor's

employment history and prospects, [5] the nature and amount of unsecured claims, [6] the

debtor's past bankruptcy filings, [7] the debtor's honesty in representing facts, and [8] any

unusual or exceptional problems facing the particular debtor."  *Deans*, 692 F.2d at 972; *see also*

*In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996).  The suspicious timing of a bankruptcy petition is

an appropriate factor for a court to consider in this bad faith analysis, *see In re Tamecki*, 229

F.3d 205, 208 (3d Cir. 2000), as is a debtor's failure to meet the Bankruptcy Code's eligibility

requirements, *see In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (affirming dismissal of Chapter

13 bankruptcy petition as a bad faith filing where bankruptcy court noted that debtor's failure to

meet § 109(e)'s secured debt requirement was one of five factors that supported its finding that

the filing was made in bad faith).

In its February 20 Order, the Bankruptcy Court found that Debtor did not file his Chapter

13 petition in good faith because, *inter alia*, the Debtor (1) was in Chapter 11 bankruptcy for

almost four years and throughout that case did not assert any claims or defenses, as it essentially

asserts now, to U.S. Bank's proof of claim; (2) his proposed Chapter 13 Plan calls for zero

payments; (3) the only apparent purpose of filing the Chapter 13 case "is to delay a foreclosure

by challenging the lender's secured lien;" (4) despite Debtor's representations to the contrary and

four year time period to do so, he has not made efforts to sell the Lorton Property to pay any

outstanding debt; and (5) notwithstanding the adverse judgments received in two separate

litigations—in the Fourth Circuit and in the District of Columbia—Debtor continues to

characterize U.S. Bank's claim over the Lorton Property as "disputed."  R. at 253-54.

Separately, in its March 24 Order, the Bankruptcy Court also noted, in addition to the above

cited reasons, that Debtor lacked good faith in filing his Chapter 13 petition because "he

substantially exceeded the Chapter 13 secured debt limit."  *Id*. at 269.

      Based on the record before the Court, the Court finds that it was not an abuse of

discretion for the Bankruptcy Court to dismiss Debtor's Chapter 13 petition as a bad faith filing.

      *First*, the suspicious timing of Debtor's petition and the background against which it was

filed appropriately called into question the motive and purpose behind the filing.  In filing the

Bankruptcy Case, which was filed less than one month *after* the Supreme Court denied

*certiorari*, Debtor continues to contest the validity of the secured lender's claim in the Lorton

Property, despite spending four years in Chapter 11 (without once objecting to the mortgagor's

claim) and despite Debtor's failed efforts to litigate the secured lender's claim before two federal

district courts.  Underscoring this point is the fact that Debtor has made no plan for repayment

under the proposed Chapter 13 plan.  Thus, based on these undisputed facts, the Bankruptcy

Court, which is best positioned to assess the facts related to credibility and purpose, did not

clearly err or abuse its discretion.  *See also Tameki*, 229 F.3d at 207 (noting bankruptcy courts'

broad power "to decide whether the petitioner has abused the provisions, purpose, or spirit of

bankruptcy law").

      *Second*, the Bankruptcy Court did not err in finding, as an additional ground for bad faith,

that the Debtor exceeded the Chapter 13 debt limit.  In 2019, when Debtor filed the Petition, §

109(e) of the Bankruptcy Code provided that only an individual with regular income that owes,

on the date of the filing a Chapter 13 petition, noncontingent, liquidated secured debts of less

than $1,257,850 is eligible to be a debtor under Chapter 13.  11 U.S.C. § 109(e) (2019).  Thus,

for purposes of filing a Chapter 13 petition, a court must determine and then include in

calculating a debtor's eligibility all *secured debts* that are *noncontingent* and *liquidated*.

A "noncontingent debt" is a debt where "all of the events necessary to give rise to

liability for it take place prior to the filing of the petition." *In re Jones*, 2013 WL 2352569, at *2

(Bankr. D.S.C. 2013) (quoting *In re Sappah*, 2012 WL 6139644, at *1 (Bankr. E.D.N.C. 2012)).

"Only if liability relies on some future extrinsic event which may never occur will the debt

be held to be contingent." *In re Hanson*, 275 B.R. 593, 596 (Bankr. D. Colo. 2002) (quoting *In re

Nesbit*, No. 99-28414JKF, 2000 WL 294834 at *2 (Bankr. W.D. Pa. Mar. 16, 2000)). The fact

that a debtor disputes a debt or has potential defenses or counterclaims that might reduce a

creditor's actual collection does not render a debt contingent.  *Id*. (citations omitted).

A "liquidated" debt is one that is readily ascertainable as to amount.  *In re Lewis*, 157

B.R. 253, 255 (Bankr. E.D. Va. 1993) (citation omitted));  *In re Mitrano*, 2008 WL 4533659, at

*1 (Bankr. E.D. Va. Sept. 25, 2008) ("A debt is unliquidated only if the amount of the debt

cannot be determined by computation, the classic example being a personal injury tort claim that

has not yet been reduced to judgment.").  Moreover, to the extent the amount is ascertainable, a

"disputed" claim is to be included as a liquidated debt.  Indeed, as a matter of policy, courts have

held that finding every disputed claim to be "not liquidated" would "allow a debtor, simply by

characterizing certain claims as disputed, to ensure his eligibility to proceed under Chapter 13 in

circumstances that Congress plainly intended to exclude from that chapter."  *In re Mazzeo*, 131

F.3d 295, 305 (2d Cir. 1997); In re Claypool, 142 B.R. 753, 755 (Bankr. E.D. Va. 1990) ("[a]

liquidated, noncontingent claim whose validity is in dispute must nevertheless be included in

determining eligibility . . . . To hold otherwise would allow debtors to bootstrap themselves to

chapter 13 eligibility simply by disputing liability on the requisite amount of their claims."); *In*

*re Mitrano*, 2008 WL 4533659, at *1 ("a debt is not excluded from the analysis simply because it

is disputed").

 Here, Debtor's debt owing to U.S. Bank is secured by real property and is ascertainable

in the amount of at least $4,325,000.00.  Further, that debt's existence (or amount) was not, at

the time of filing, dependent upon or subject to the occurrence of any future events.  Moreover,

the fact that Debtor "disputed" the secured debt, whether before or after Debtor filed an objection

to U.S. Bank's proof of claim, does not exclude the debt from deciding the debt's status as

secured.  *In re Hanson*, 275 B.R. at 596.  As such, the Bankruptcy Court did not err in holding

that the secured debt over the Lorton Property was to be included in determining Debtor's

eligibility to file for Chapter 13 bankruptcy and that such amount was clearly in excess of the

applicable secured debt limit (*i.e.*, in excess of $1,257,850).  Because the Bankruptcy Court did

not err in finding that Debtor exceed the Chapter 13 debt limit, the Court finds that it did not

abuse its discretion in deciding that Debtor filed the case in bad faith on that ground.

 Resisting these conclusions, Debtor argues that the Bankruptcy Court's conclusions are

unsupported in the record or rely on inappropriate inference.  App. Br. at 5-11.  In substance,

Debtor explains the Bankruptcy Court's decision is wrong because he is entitled to "adjudicate

the merits of U.S. Bank's proof of claim" within his Bankruptcy Case.  *Id*. at 10-11.  But these

arguments are unpersuasive.  Debtor continues to dispute U.S. Bank's ability to foreclose on the

Lorton Property while also contending that, once his objection to its proof of claim is adjudicated

in his favor, he will auction his home via private auction to salvage his equity.  *Id*.; *see also* R. at

259.  But the record before the Court produces no indication that Debtor will do so, having

already declined to sell the Lorton Property throughout the entirety of his Chapter 11 bankruptcy

(and since). In fact, Debtor's representations to the Bankruptcy Court in the underlying case

indicate that he continues to hold no intention of doing so. *See* R. at 264 (seeking

reconsideration of the February 20 Order so he can object to U.S. Bank's proof of claim in a

separate, to-be-filed Chapter 11 case).[4]

Therefore, based on the foregoing and the manner in which Defendant has pursued this

Bankruptcy Case and other litigations, the Court finds that the Bankruptcy Court did not err in

concluding that Bankruptcy Case was not filed in good faith.

### B. *Res Judicata*

Because the Court finds that the Bankruptcy Court did not err in finding that the

Bankruptcy Case was not filed in good faith, the Court does not address Debtor's second ground

for appeal—that Debtor's affirmative defenses are barred by *res judicata*—which, in any case,

the Bankruptcy Court decided in the alternative. *See* R. at 248 ("*Alternatively*, the Debtor's

Verified Objection to U.S. Bank's Proof of Claim is barred by principles of res judicata)

(emphasis added).

---

[4] In addition, Debtor contends that under the Fourth Circuit's decision in *Willner v. Dimon*, 849 F.3d 93, 109-11 (4th Cir. 2017), he is entitled to object to U.S. Bank's Proof of Claim in bankruptcy court and, having not previously pursued this option, filed his Chapter 13 petition in good faith. Appellant Br. at 10-11. But the Fourth Circuit has already rejected the premise of Debtor's argument. In *Willner*, the Fourth Circuit, in deciding whether an affirmative defense could avoid FIRREA's exhaustion requirement, held that "a purported affirmative defense does not qualify as one for the purpose of avoiding FIRREA's exhaustion requirement if, after looking beyond the nomenclature of the request for relief, the remedy sought is actually a 'claim' within the meaning of FIRREA." *Id*. at 110. Then, the Fourth Circuit went on to hold, with respect to two of Debtor's counts seeking a declaratory judgment to stop the foreclosure, which Debtor had characterized as "affirmative defenses," that both "are not affirmative defenses [as characterized by Debtor] because each is a 'claim' within the meaning of FIRREA." *Id*. at 110-11. Based on this reasoning, this Court cannot find that Debtor, in good faith, believed the Fourth Circuit would permit him to raise affirmative defenses to a proof of claim, as he did below, when the relief sought—to stop the foreclosure of the Lorton Property— is effectively the same relief he sought before in two federal district courts. Debtor (who is an attorney) was undoubtedly aware of the Fourth Circuit's rejection of the argument here, yet continued to, in effect, pursue the "claim."

## VI.   CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the United States Bankruptcy Court for the Eastern District of Virginia's

February 20, 2020 Order dismissing Debtor's Chapter 13 Plan be, and the same hereby is,

**AFFIRMED**; and it is further

ORDERED that the United States Bankruptcy Court for the Eastern District of Virginia's

March 24, 2020 Order denying Debtor's Motion to Reconsider be, and the same hereby is,

**AFFIRMED**; and it is further

ORDERED that this appeal be, and the same hereby is, **DISMISSED**.

**This is a Final Order for purposes of appeal.** To appeal, Debtor must file a written

notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order.  A

written notice of appeal is a short statement stating a desire to appeal this Order and noting the

date of the Order Debtor wants to appeal.  Debtor need not explain the grounds for appeal until

so directed by the Court.

The Clerk is directed to forward copies of this Order to all counsel of record and to the

United States Bankruptcy Court for the Eastern District of Virginia.

/s/

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
August 24, 2020

13